DAGMAR ADAMS, as Mother and Next Friend of Tiffany Adams, a Disabled Person, Plaintiff-Appellant, v. AMERICAN INTERNATIONAL GROUP, INC., Defendant-Appellee.

First District (5th Division)    No. 1—01—2198

Opinion filed April 11, 2003.—Rehearing denied June 23, 2003.

A. Denison Weaver, Ltd., of Chicago (A. Denison Weaver and Matthew Belcher, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (James T. Ferrini, James O. Nolan, Mary F. Stafford, and Susan Condon, of counsel), for appellee.

JUSTICE HARTIGAN delivered the opinion of the court:

Plaintiff Dagmar Adams, as mother and next friend of Tiffany Adams, appeals the dismissal of her complaint seeking prejudgment interest from defendant American International Group (AIG) on the proceeds of a settlement paid by American International Specialty Lines Insurance Company (AISLIC). Plaintiff raises the following issues on appeal: (1) whether the complaint states a cause of action for prejudgment interest, specifically, whether the release executed by plaintiff is an "instrument of writing" within the meaning of section 2 of the Illinois Interest Act (the Interest Act) (815 ILCS 205/2 (West 2000)); (2) whether the complaint states a cause of action for unjust enrichment; (3) whether the release bars plaintiff's action; and (4) whether AIG is a proper party. For the reasons that follow, we hereby affirm.

## I. BACKGROUND

This appeal stems from a negligence action brought by plaintiff in 1995, against Glen Oaks Nursing Center, Inc. (Glen Oaks), and others for damages suffered by Tiffany Adams, a disabled person, while a patient at Glen Oaks. In October 2000, the parties to the negligence action reached an oral settlement agreement that provided for a $250,000 payment to plaintiff, payable in two equal installments of $125,000. Thereafter, on October 26, 2000, plaintiff executed a release discharging Glen Oaks and its insurers. The release states that it is executed "in consideration of the payment of the total sum of Two-Hundred Fifty Thousand Dollars." The release acknowledges that as a condition precedent to payment, plaintiff was to obtain a court order approving the settlement. The release further states that the settlement payment would be made in two equal installments of $125,000. The release does not state a due date for the payments, nor does it provide for the payment of interest. On November 15, 2000, AISLIC paid plaintiff the first installment of $125,000. On December 15, 2000, AISLIC paid plaintiff the second and final installment of $125,000.

On December 27, 2000, two weeks after receiving the final installment, plaintiff filed the instant lawsuit against AIG. Plaintiff's

complaint alleges that, at the time of the occurrence giving rise to the negligence action, Glen Oaks was insured "by either AIG or one of its member companies who undertook to defend the suit."[1] The complaint alleges that on October 13, 2000, AIG and plaintiff agreed to settle plaintiff's negligence claim for $250,000 to be paid in two equal installments; the first in October 2000, and the second in November 2000. The complaint further alleges that on October 27, 2000, plaintiff forwarded a release to AIG releasing Glen Oaks from its liability arising out of the occurrence. According to the complaint, AIG did not pay the October 2000 installment of $125,000 until November 15, 2000, and did not pay the November 2000 installment until December 15, 2000.

In count I of the complaint, plaintiff seeks prejudgment interest pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 2000)). In count II of the complaint, plaintiff seeks prejudgment interest based on a theory of unjust enrichment asserting that AIG retained the settlement funds beyond the time agreed to for its own purposes, in violation of "fundamental principles of justice and good conscience."

In addition to seeking judgment against AIG for the interest allegedly due plaintiff, the complaint also asks that plaintiff be allowed to maintain her action as a nationwide class action, for an accounting by AIG of "every third party liability claim settlement entered into," and for judgment in the amount of interest that accrued on each settlement.[2]

On April 25, 2001, defendant moved to dismiss the complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615, 2—619 (West 2000)). With respect to count I, AIG argued plaintiff could not state a claim under the Interest Act because plaintiff's release imposes no interest obligation on the releasees nor did the settling parties otherwise agree that interest was payable on the settlement amount. With respect to count

---

[1] In an affidavit attached to its motion to dismiss, AIG avers that Glen Oaks maintained a liability insurance policy issued by American International Specialty Lines Insurance Company (AISLIC), which responded to the tort claims. According to AIG, all of the shares of AISLIC were owned by National Union Fire Insurance Company of Pittsburgh, the Insurance Company of the State of Pennsylvania, and Birmingham Fire Insurance Company of Pennsylvania, which are each wholly owned subsidiaries of AIG. AIG further averred that it is not an insurance company, it does not write or issue insurance policies, and it does not control or manage AISLIC.

[2] Plaintiff's motion for class certification was filed on March 13, 2001. On March 26, 2001, the trial court stayed the motion pending resolution of defendant's motion to dismiss.

II, AIG argued Illinois does not allow recovery on an implied contract, *i.e.*, an implied contract to pay interest, when an express contract, *i.e.*, the October 13, 2001, settlement agreement, exists between the parties.

In the alternative, AIG argued that plaintiff's claims were barred by the release executed by plaintiff against Glen Oaks and its insurers. In the further alternative, AIG argued that plaintiff named the wrong entity as defendant.

After a hearing on AIG's combined motion, the trial court granted the motion "on all grounds *** recited" and dismissed plaintiff's complaint with prejudice. Plaintiff now appeals.

## II. ANALYSIS

### A. Standard of Review

■ A motion to dismiss under section 2—615(a) of the Code (735 ILCS 5/2—615(a) (West 2000)) tests the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2—619(a) (735 ILCS 5/2—619(a) (West 2000)) admits the legal sufficiency of the plaintiff's claim, but asserts certain defects or defenses outside the pleading that defeat the claim. See *Provenzale v. Forister*, 318 Ill. App. 3d 869, 878, 743 N.E.2d 676 (2001); *Joseph v. Chicago Transit Authority*, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733 (1999). Under either section, our standard of review is *de novo*. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

### B. Sufficiency of Complaint Under Section 2—615 of the Code

■ A section 2—615 motion should be granted only in those situations where the allegations of the complaint, viewed in a light most favorable to the plaintiff, are insufficient to state a cause of action upon which relief can be granted. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790, 758 N.E.2d 382 (2001). In considering the trial court's judgment, this court accepts all well-pled facts and the reasonable inferences to be drawn therefrom as true. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996). A cause of action will not be dismissed on the pleadings unless it is apparent that no set of facts can be proved that will entitle the plaintiff to recover. *Bryson*, 174 Ill. 2d at 86-87.

### 1. *Count I: Illinois Interest Act*

Plaintiff first argues that the trial court erred in dismissing count I of her complaint, which seeks an award of prejudgment interest under section 2 of the Interest Act. 815 ILCS 205/2 (West 2000).

■ Section 2 provides:

"Creditors shall be allowed to receive at the rate of five (5) per

centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." 815 ILCS 205/2 (West 2000).

Plaintiff's claim under this section is premised upon her argument that the release she signed is an "instrument of writing."

■ The "instrument of writing" provision of the Interest Act incorporates two requirements into a claim for interest based upon a written instrument. First, the written instrument must establish a debtor/creditor relationship. See *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank*, 265 F.3d 601, 628 (7th Cir. 2001). Second, the written instrument must contain a specific due date. See *Reserve Insurance Co. v. General Insurance Co. of America*, 77 Ill. App. 3d 272, 275-76, 395 N.E.2d 933 (1979) (and cases cited therein). The release herein does not do either.

■ First, contrary to plaintiff's contention, the release does not establish a debtor/creditor relationship because here the underlying obligation to pay the settlement proceeds does not arise by virtue of the release; rather, it arises by virtue of the October 13, 2000, oral settlement agreement. A review of the release shows that it does not impose an obligation on AIG or any other party to pay. The recitals in the release concerning the settlement amount merely acknowledge the consideration given by the defendants in the negligence action pursuant to the oral settlement agreement. Thus, because the release does not create the debtor/creditor relationship, it does not qualify as an instrument of writing under section 2 of the Interest Act.

Second, even if we were to agree with plaintiff's argument that a debtor/creditor relationship was established by the release, the release is still insufficient to support plaintiff's claim for interest because it does not bear either a specific or an inherent date by which the indebtedness created comes due. We reject plaintiff's argument that by the subject matter of the underlying obligation, *i.e.*, the settlement of a personal injury case, one can infer that payment would be made at the time the releases are executed, and if an agreement was made to accept payment in two installments, the first installment would be the date the releases were executed and returned to defendant and the second installment no more than 30 days thereafter. Plaintiff cites no support for this interpretation and it is speculative at best.

Accordingly, we hold that the release is not an instrument of writing under section 2 of the Interest Act and, therefore, plaintiff cannot state a cause of action for interest thereunder.

### 2. *Count II: Unjust Enrichment*

Plaintiff's next argument on appeal is that the trial court erred in

dismissing with prejudice count II of her complaint alleging unjust enrichment.

■ Our supreme court has held that to "state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989).

Count II of plaintiff's complaint alleges the following:

"14. Plaintiff, as the duly-appointed Guardian of the person of Tiffany Adams, brought suit against Glen Oaks Nursing Home, seeking to recover monetary damages for an assault committed upon plaintiff's ward who was a patient at Glen Oaks. At the time of the occurrence, Glen Oaks was insured for its general liability by either AIG or one of its member companies who undertook to defend the suit.

15. That on October 13, 2000, in Cook County, Illinois, AIG, as the insurer of Glen Oaks, and plaintiff agreed to settle plaintiff's claim for $250,000 to be paid in two equal installments payable in October and November 2000. Plaintiff did not agree to waive prejudgment interest on the principal amount of the settlement.

16. That on October 27, 2000, the plaintiff forwarded to defendant AIG through its attorney duly-executed Releases releasing Glen Oaks from its liability arising out of the said occurrence, together with a demand for payment (Exhibit 1).

17. That thereafter defendant, notwithstanding being in possession of the documents necessary to release its insured from any and all liability arising out of the underlying occurrence, retained the settlement proceeds which plaintiff was entitled to beyond the time agreed to as part of the Settlement Agreement, using plaintiff's funds for its own purposes, thus becoming unjustly enriched at plaintiff's expense against the fundamental principles of justice, equity, and good conscience."

■ As noted by AIG, an action for unjust enrichment that seeks imposition of an implied contract, here a contract to pay interest, cannot be maintained where an express contract governs the parties. See *B&B Land Acquisition, Inc. v. Mandell*, 305 Ill. App. 3d 1068, 714 N.E.2d 58 (1999). We disagree with plaintiff's argument that the subject matter of the parties' agreement, *i.e.*, the settlement of the underlying negligence claim, is different from the subject matter of the implied contract she seeks to have imposed, *i.e.*, the payment of interest resulting from AIG's failure to pay plaintiff the settlement proceeds when due. The unjust enrichment claim clearly arises out of

the settlement agreement that governs the payment of the settlement proceeds.

Accordingly, we find that the trial court properly dismissed count II of plaintiff's complaint alleging unjust enrichment.

Based on the foregoing, we hereby affirm the trial court's dismissal with prejudice of plaintiff's complaint pursuant to section 2—615 of the Code for failure to state a claim under either section 2 of the Interest Act or based upon a theory of unjust enrichment.

### C. Sufficiency of Complaint under Section 2—619

■ Section 2—619(a)(9) allows for dismissal of a cause of action when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2000). The term "affirmative matter" as used in section 2—619(a)(9) has been defined as "a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Consumer Electric Co. v. Cobelcomex, Inc.*, 149 Ill. App. 3d 699, 703, 501 N.E.2d 156 (1986).

### 1. *The Release as a Bar to Plaintiff's Action*

■ Plaintiff argues the trial court erred in finding the release bars this action. The rules of construction applicable to releases are well established:

> "A release is a contract whereby a party abandons a claim to the person against whom the claim exists. [Citation.] Accordingly, the interpretation of a release is governed by contract law. [Citation.] Thus, the rights of the parties are limited to the terms expressed in the agreement and a release will not be construed to release claims not within the contemplation of the parties. [Citation.] The intention of the parties controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement. [Citation.] Where the terms of the release are clear and explicit, the court must enforce the release as written. [Citation.]" *Loberg v. Hallwood Realty Partners, L.P.*, 323 Ill. App. 3d 936, 941, 753 N.E.2d 1020 (2001).

■ The release at issue releases "any and all claims *** which ADAMS may have ever had or can, shall or may have against any of the Releasees, upon and by reason of the care and treatment rendered to TIFFANY ADAMS from October 1994 through and including February 1995."

Plaintiff argues that because the release limits its scope to claims

arising "upon and by reason of" the underlying occurrence, it cannot be construed to include plaintiff's claim for prejudgment interest. We disagree. Plaintiff's interest claim exists solely "by reason of" her negligence claim. Indeed, but for the negligence claim, there would be no settlement and no claim for interest. Moreover, the release indicates the intention of the parties to avoid future litigation. It states "this settlement is intended merely to settle and compromise a disputed claim *and avoid pending and further litigation.*" (Emphasis added.) Further, it states it is a "full release of all matters, past, present *and future, known or unknown, and without limitation.*" (Emphasis added.)

Accordingly, we hold that the plaintiff's claims are barred by the release and the court properly dismissed with prejudice plaintiff's complaint pursuant to section 2—619(a) of the Code.

### 2. *Whether AIG is a Proper Defendant*

Finally, plaintiff asserts that the trial court erred in dismissing the action based on AIG not being a proper defendant. Because our findings in section B and section C1 above are dispositive, we need not address whether AIG is a proper party.

### III. CONCLUSION

Accordingly, for the aforementioned reasons, we hereby affirm the trial court's order dismissing plaintiff's complaint with prejudice.

Affirmed.

QUINN and REID, JJ., concur.