SECOND DIVISION
November 28, 2006

No. 1-06-0519

| | | |
|---|---|---|
| MARY ALICE SMITH, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| STATE FARM INSURANCE COMPANIES, | ) | |
| INC., | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Barbara J. Disko, |
| | ) | Judge Presiding. |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court which granted summary judgment in favor of defendant, State Farm Insurance Companies (State Farm), and against plaintiff, Mary Alice Smith, on the grounds that she had released her right to bring a claim for State Farm's alleged vexatious and unreasonable delay in handling her uninsured motorist claim by virtue of the parties' arbitration agreement.

In December 2001, plaintiff was involved in an accident wherein she was struck and injured by a hit-and-run driver. She was insured by State Farm under an $100,000 uninsured motorist policy and subsequently filed a claim. On or about August 15, 2003, State Farm offered to settle her claim under her uninsured motorist policy for $13,000. She rejected that offer and retained an attorney, who on December 9, 2003, demanded arbitration pursuant to State Farm's insurance policy requirements for uninsured motorist coverage. On or about October 25, 2004,

plaintiff's attorney forwarded to State Farm a complete "specials package," which included a copy of the crash report, a list of medical personnel who treated her following the accident, copies of her medical records, reports, and bills, and releases signed by her authorizing State Farm to verify or secure further medical information as needed. All of the medical records indicated that plaintiff's injuries were causally connected to the accident.

Plaintiff subsequently demanded the $100,000 uninsured motorist policy limits from State Farm, which it refused. Instead, State Farm tendered $25,000 as an interim payment to plaintiff without prejudice against any final settlement or award and promised to negotiate in good faith after it had additional time to review the package. Plaintiff made a demand for arbitration of her uninsured motorist claim, and the parties agreed to employ a single arbitrator through A.D.R. Systems of America, LLC. The agreement included a high-low agreement wherein the plaintiff could receive no less than $25,000 and no more than $105,000, which was the policy limits subject to a set-off credit for the $25,000 previously paid her by State Farm. The agreement also stated that the arbitration award would be "final and binding and not subject to appeal or motion for reconsideration by either party." Additionally, the agreement stated in pertinent part:

> "When the decision is rendered, the matter is resolved, any award
> arising from this agreement shall operate as a bar and complete
> defense to any action or proceeding in any court or tribunal that
> may arise from the same incident upon which the arbitration hearing
> is based."

On or about February 14, 2005, plaintiff again requested to settle the uninsured motorist

claim, reducing her demand to $75,000 of the remaining $80,000 of the policy. She also enclosed a copy of a report from Dr. Laurence Hogstrom, her primary care physician, wherein he linked her injuries to the accident and stated that her medical treatment was necessary and appropriate. Once again, State Farm rejected the offer.

Plaintiff again offered to settle with State Farm on June 14, 2005, for the $80,000 balance of the policy. The settlement offer included plaintiff's intent to pursue further legal action in a subsequent lawsuit for State Farm's willful and vexatious claims' practice if State Farm forced the matter to go to arbitration. State Farm again refused the settlement offer.

The matter then proceeded to a formal arbitration hearing on July 12, 2005, at which time plaintiff's "90(c) package" (166 Ill. 2d R. 90(c)) was entered into evidence. Plaintiff testified and offered additional documents and data into evidence. However, State Farm did not appear at the hearing and, therefore, did not present any evidence or contest the extent of plaintiff's injuries or their causation by the accident. The arbitrator awarded plaintiff $124,823.99 and found she had no comparative fault. State Farm subsequently paid her the remaining $80,000 balance under her uninsured motorist policy.

Plaintiff filed a one-count complaint against State Farm, claiming damages under section 155 (215 ILCS 5/155 (West 2004)) of the Insurance Code for its willful and vexatious refusal to properly evaluate and settle her uninsured motorist claim. The complaint alleged that State Farm had almost three years prior to counsel's October 2004 policy demand in which to investigate the claim and an additional four months after receiving plaintiff's specials package to investigate before she made her second settlement demand in February 2005, and a final chance to settle prior

3

to the arbitration, but did not, and that there was never a *bona fide* dispute concerning coverage. The complaint further alleged the existence of the statutory violation and that State Farm's actions constituted vexatious and unreasonable delays in refusing to settle the claim. Plaintiff sought a finding that State Farm's actions constituted a vexatious and unreasonable refusal to settle; an award of her reasonable attorney fees and costs; and one of the following additional amounts: 60% of the amount which the court or jury found she would be entitled to recover against State Farm; or $60,000; or the excess of the amount which the court or jury found she would be entitled to recover over the amount that State Farm offered to pay in settlement of the claim prior to the action.

State Farm filed a motion to dismiss plaintiff's complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(6) (West 2004)), contending that the arbitration agreement acted as a complete bar to her section 155 cause of action.

Plaintiff countered that the arbitration agreement only related to the car crash and the amount, if any, she should be compensated under the uninsured motorist policy with respect to her injuries and that the arbitration award did not extend to bar a separate claim relating to State Farm's handling of the claim. Plaintiff further contended that State Farm should be collaterally estopped, as a matter of public policy, from alleging that the arbitration agreement acted as a bar. This contention was based on State Farm's opposite position in another case where the plaintiff had filed a section 155 action prior to arbitration. In that case, Inman v. State Farm (No. 04 L 012713), State Farm alleged that the plaintiff had filed prematurely because he filed prior to binding arbitration taking place, asserting that an aggrieved policyholder could only file a section

1-06-0519

155 action after the arbitration was completed.

The circuit court entered a written order on November 8, 2005, in which it addressed State Farm's motion as a motion for summary judgment (735 ILCS 5/2-1005 (West 2004)) rather than as a section 2-619 motion to dismiss. The order stated in pertinent part:

> "Plaintiff claims that she never released her right to bring a claim for vexatious delay ***. Regardless, her allegations pertain to a vexatious and unreasonable refusal to settle. The arbitration agreement provides the opposite. The parties did come to terms on their 'high/low' agreement. As there is no proof of a vexatious or unreasonable delay in settling (as both parties agreed to be bound to the finding of the arbitrator and the extent of the arbitration agreement), Plaintiff's claim cannot continue. Accordingly, this Court grants Defendant's motion for summary judgment."

Plaintiff's subsequent motion for reconsideration was denied.

On appeal, plaintiff contends the trial court erred in granting defendant's motion and specifically in holding that the arbitration agreement bars her section 155 claim. She first argues that her complaint states a cause of action for vexatious delay. She also contends that her complaint is not barred by the arbitration agreement because the arbitration agreement, when read as a whole, unambiguously defines the scope of the agreement as relating solely to the car crash, the physical injuries sustained by plaintiff and the amounts due from defendant under the uninsured motorist coverage.

5

1-06-0519

The purpose of summary judgment is to facilitate litigation and expedite trial procedure. LaMonte v. City of Belleville, 41 Ill. App. 3d 697, 702 (1976). Because the resulting dismissal of the cause of action is a drastic measure, summary judgment should be awarded with caution. LaMonte, 41 Ill. App. 3d at 702.

Review of the trial court's ruling on a motion for summary judgment or a motion to dismiss under section 2-619 is *de novo*. Landeros v. Equity Property and Development, 321 Ill. App. 3d 57, 63 (2001); Pavlik v. Kornhaber, 326 Ill. App. 3d 731, 737-38 (2001). Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Landeros, 321 Ill. App. 3d at 63-64. The purpose of the summary judgment procedure is not to decide the facts but to ascertain whether a factual dispute exists. Landeros, 321 Ill. App. 3d at 64. If reasonable persons could draw different inferences from the undisputed facts, summary judgment should be denied. Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 559 (2000).

Here, the trial court found that plaintiff had released her right to bring a section 155 action by virtue of the arbitration agreement, which stated that the arbitration award acted as a bar to any action arising from the same incident upon which the arbitration hearing was based. A review of the trial court's written order suggests that the trial court only considered State Farm's actions surrounding the arbitration process and settlement thereof, and found no delay during that process. Plaintiff contends that the arbitration agreement, when read as a whole, establishes that

6

the arbitration hearing and subsequent award only pertained to the terms of the uninsured motorist policy. Conversely, State Farm contends that the arbitration award was a release of plaintiff's subsequent section 155 action. Accordingly, we must determine whether plaintiff's section 155 claim was barred by the terms of the arbitration agreement.

A court's principal goal in construing a contract is to ascertain and give effect to the parties' intent at the time they entered into the contract. Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 888 (1995). The scope and effect of a release are controlled by the intention of the parties. Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 761 (2000). This intent is determined from the language used and the circumstances of the transaction. Martin, 318 Ill. App. 3d at 762. A release cannot be construed to include claims not within the contemplation of the parties. Martin, 318 Ill. App. 3d at 762. Where there are only words of a general release, the release will be restricted to the thing or things intended to be released and we will not interpret generalities so as to defeat a valid claim not then in the minds of the parties. Martin, 318 Ill. App. 3d at 762.

In Adams v. American International Group, Inc., 339 Ill. App. 3d 669 (2003), a case upon which State Farm relies, plaintiff brought a negligence action on behalf of her daughter, a disabled person, who was a patient in a nursing home. A settlement was reached, and plaintiff executed a release that discharged the nursing home and its insurers. Adams, 339 Ill. App. 3d at 671. The release stated the amount of the settlement; that plaintiff was to obtain a court order approving the settlement; and the settlement would be made in two equal installments, but it did not provide for a due date for the payments or the payment of interests. Adams, 339 Ill. App. 3d at 671.

7

Two weeks after receiving the final installment, plaintiff filed a lawsuit against defendant, which was the insurer of the nursing home, seeking prejudgment interest pursuant to the Illinois Interest Act (815 ILCS 205/2 (West 2000)) and based upon a theory of unjust enrichment on the grounds that defendant retained the settlement funds beyond the time agreed to for its own purposes. Adams, 339 Ill. App. 3d at 675. The defendant moved to dismiss the complaint on the grounds, *inter alia,* that plaintiff's claims were barred by the release. Adams, 339 Ill. App. 3d at 672-73. The trial court granted the motion on all grounds and dismissed the complaint with prejudice. Adams, 339 Ill. App. 3d at 673. In affirming the trial court, this court stated:

> "Plaintiff's interest claim exists solely 'by reason of' her negligence claim. Indeed, but for the negligence claim, there would be no settlement and no claim for interest. Moreover, the release indicates the intention of the parties to avoid future litigation. It states 'this settlement is intended merely to settle and compromise a disputed claim and avoid pending and further litigation.' Further, it states it is a 'full release of all matters, past, present and future, known or unknown, and without limitation.' " Adams, 339 Ill. App. 3d at 677.

Defendant maintains that, as in Adams, but for the underlying uninsured motorist claim, which arose from the automobile accident, there would be no supposed bad-faith section 155 claim and that the arbitration agreement includes any claims regarding vexatious and unreasonable delays in defendant's alleged mishandling of the case.

Adams did not involve a section 155 claim. Furthermore, in Adams, the language in the release pertained to all matters related to the litigation, "without limitation." However, no such qualifying language appears in the arbitration agreement in the instant case. In the case at bar, the agreement states in section 4 that the arbitrator shall decide the issues of "liability, personal injury damages and causation only. Additionally, the arbitrator shall make a finding regarding comparative fault, if any." We read that language to mean that the arbitration hearing was confined solely to those issues. In section 6 of the agreement, it states that "when the decision is rendered, the matter is resolved, [and] any award arising from this agreement shall operate as a bar and complete defense to any action or proceeding in any court or tribunal that may arise from the same incident upon which the arbitration hearing is based." "The matter" referred to in paragraph 6 refers to the automobile accident and the injuries plaintiff sustained. The agreement, as written, cannot be construed to refer to a section 155 claim, which is separate and apart from the issues contained within the arbitration agreement.

Section 143(a)(1) of the Code requires the arbitration of "any dispute with respect to" uninsured motorist coverage. 215 ILCS 5/143a(1) (West 2004). Our supreme court in State Farm Fire & Casualty Co. v. Yapejian, 152 Ill. 2d 533, 537 (1992), defined the scope of that language when it reversed an appellate court's ruling that section 143a(1) unambiguously required arbitration of all disputes relating to uninsured motorist coverage. In defining the scope of that section, the supreme court construed it narrowly to limit the matters submitted to arbitration to disputes concerning covered claims, once coverage had been established, noting that such a limitation would allow the resolution of a number of issues in the courts and contribute to the

1-06-0519

body of case law on the subject of uninsured motorist coverage. State Farm, 152 Ill. 2d at 543-44.

Section 155 of the Code gives an insured a private action against an insurer for attorney fees. 215 ILCS 5/155 (West 2004). Section 155 of the Code provides in pertinent part:

> "(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance *** and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs plus an amount not to exceed any one of the following amounts ***."
>
> 215 ILCS 5/155 (West 2004).

See also Buais v. Safeway Insurance Co., 275 Ill. App. 3d 587, 591 (1995). This statute provides " 'an extracontractual remedy to policyholders.' " Employers Insurance of Wausau v. EHLCO Liquidating Trust, 186 Ill. 2d 127, 159 (1999), quoting Cramer v. Insurance Exchange Agency, 174 Ill. 2d 513, 520 (1996). The remedy is intended to make suits by policyholders economically feasible and punish insurance companies for misconduct. Williams v. American Country Insurance Company, 359 Ill. App. 3d 128, 141 (2005). The supreme court added that an insured plaintiff could recover reasonable attorney fees and other costs as part of a breach of contract action to recoup the proceeds due under the policy. American Service Insurance Co. v. Passarelli, 323 Ill. App. 3d 587, 590 (2001), citing Cramer, 174 Ill. 2d at 520. This type of claim is only proper in court and not in arbitration proceedings, as the statute vests the court with the

10

discretion to determine the award.  See 215 ILCS 5/155 (West 2004).

Based upon the foregoing analysis, we find the trial court erred in granting State Farm's summary judgment motion on plaintiff's section 155 complaint.  Plaintiff's section 155 action is authorized by statute as a private cause of action by insureds and is not covered under the scope of an arbitration for two reasons: (1) section 143a(1) defines the scope of arbitration hearings on uninsured motorist claims to disputes covering covered claims; and (2) section 155 itself vests the court with discretion to determine the award, if any, in a matter brought pursuant to it.  Our disposition is not at odds with the arbitration agreement in this case, which indicated that the arbitration hearing was confined to issues of liability, personal injury damages, causation and a determination of plaintiff's comparative fault.  The paragraph stating the "effect" of the agreement simply related back to the scope of the hearing itself.  Therefore, we conclude that the arbitration agreement did not bar plaintiff's subsequent section 155 action.

Accordingly, we reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

WOLFSON, P.J., and HALL, J., concur.